# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| MALCOLM MARSHALL, | : | |
| Plaintiff, | : | |
| | : | NO. 4:20-CV-250-CDL-MSH |
| v. | : | |
| Lieutenant YOUNG; | : | |
| Defendant. | : | |

## ORDER AND RECOMMENDATION

Pending before the Court is Defendant Lieutenant Young's motion for summary judgment (ECF No. 11). Also pending is Plaintiff Malcolm Marshall's motion for appointment of counsel and/or extension of time to respond to Young's summary judgment motion (ECF No. 19). For the reasons explained below, it is recommended that Young's motion for summary judgment be granted. Marshall's motion for appointed counsel and/or extension is denied.

## PROCEDURAL BACKGROUND

The present action is brought under 42 U.S.C. § 1983 and arises out of Marshall's confinement at Rutledge State Prison ("RSP") in Columbus, Georgia. Compl. 3, ECF No. 1. Marshall contends that Young—an officer at RSP—violated his Eighth Amendment rights by failing to protect him from an attack by another inmate. Compl. 5. The Court received Marshall's complaint (ECF No. 1) on October 13, 2020. Although Marshall also asserted claims against the warden of RSP and another correctional officer, following

preliminary screening, only his Eighth Amendment failure-to-protect claim against Young was allowed to proceed for further factual development. Order & R. 5-8, Oct. 20, 2020, ECF No. 4; Order, Dec. 9, 2020, ECF No. 9 (adopting recommendation). Young answered (ECF No. 10) on December 16, 2020, and moved for summary judgment (ECF No. 11) on March 15, 2021. On April 15, 2021, the Court received Marshall's request (ECF No. 15) for a forty-five day extension to respond to Young's motion. The Court granted Marshall's request in part, allowing him a twenty-one day extension to respond. Text-Only Order, Apr. 16, 2021, ECF No. 16. On May 7, 2021, the Court received Marshall's request for appointed counsel and/or another extension of time to respond (ECF No. 19). The Court received Marshall's response (ECF No. 18) to Young's summary judgment motion on May 14, 2021. These motions are ripe for review.

## DISCUSSION

### I. Marshall's Motion for Appointed Counsel and/or Extension of Time

On May 7, 2021, the Court received Marshall's request for appointed counsel "and or time extension" to respond to Young's summary judgment motion. Pl.'s Mot. to Appoint Couns. 1, ECF No. 19. In his motion, Marshall contends that an inmate who was assisting him in this matter has been placed in segregation and that due to Marshall's lack of education and diagnosis of mental illness, he cannot respond to Young's motion on his own. *Id.* at 1-2. Marshall indicates he has found a second inmate to assist him but that there is "not enough time" to file a response. *Id.* at 1. Therefore, he requests an extension until June 1, 2021, to file a response "or an attorney to assist him." *Id.* at 2. Although

2

received by the Court on May 7, 2021, Marshall's motion was not docketed by the Clerk until May 21, 2021. By that time Marshall had filed a response (ECF No. 18) to Young's summary judgment motion.

Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).

Plaintiff has failed to present any extraordinary circumstances justifying the appointment of counsel in this case. This case is not complicated, involving only one defendant and a relatively short timeline of events. Further, Marshall has filed a comprehensive response to Young's summary judgment motion, including a brief, exhibits, and statement of disputed material facts. Accordingly, Marshall's request for court-appointed counsel is **DENIED**. Further, as Marshall has responded to Young's motion for summary judgment, his request for an extension of time to respond is **DENIED AS MOOT**.

## II. Young's Motion for Summary Judgment

Young moves for summary judgment, arguing, *inter alia*, Marshall cannot show that he was deliberately indifferent to his safety. Def.'s Br. in Supp. of Mot. for Summ. J. 7-10, ECF No. 13. The Court agrees, recommends granting summary judgment, and declines to address Young's other grounds.

### A. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing

summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. *Id.* at 324–26. This evidence must consist of more than conclusory allegations. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

B. <u>Factual Background</u>

Marshall has been confined at RSP since 2014 and had been assigned to Building C, dorm 2 for several years prior to the events in question. Pl.'s Dep. 10:22-23, 13:9-15, 14:5-7, ECF No. 11-2. Inmates with mental health issues—such as Marshall—are assigned to Building C. *Id.* at 14:8-23. There are four dorms in Building C, numbered one through four. *Id.* at 21:4-9. In late December 2019 or early January 2020, Marshall was assigned Brandon Harris as a roommate in C-2, room 7. Young Aff. Ex. 2, ECF No. 11-7; Pl.'s Decl. ¶ 1, ECF No. 18-1. Inmate Jason Guest, a friend of Marshall's, was assigned to the room next door, C-8. Pl.'s Dep. 23:1-3. Prior to January 25, 2020, Marshal had never had any problems with Harris or been threatened by him. *Id.* at 18:16-19; 31:17-21. Marshall is five feet, six inches tall and was—at the time of his deposition one year later—fifty-nine years old, and weighed one-hundred and eighty-six pounds. *Id.* at 12:2-7. Harris was in his mid-twenties at the time of the incident and over six feet tall. *Id.* at 34:10; Pl.'s Decl. ¶ 9.

5

On January 25, 2020, prior to lunch, Guest came into Marshall's room to drink coffee with him. Pl.'s Dep. 10:9-10, 11:16. Harris became upset because he believed Guest was touching him. *Id.* at 10:10-11. Marshall kept telling Harris that Guest was not touching him. *Id.* at 10:11-12. At some point, Harris put a lock in a sock and started threatening to beat Guest and Marshall. *Id.* at 27:15-23. This included a threat to "beat [Marshall's] brains out." *Id.* at 9:21-23. Another inmate, Jackson, was able to get Young to come to Building C. *Id.* at 19:5-6, 18-23. Marshall, Guest, and Jackson then met with Young near an officer's room and told him about the threats that Harris was making. Pl.'s Dep. 19:24-20:4, 32:12-21. Young was informed of Harris's threats to kill Marshall and Guest with the lock in a sock.[1] *Id.* at 27:11-23; Pl.'s Decl. ¶ 6. Harris was not present during the conversation, which lasted two to three minutes. Pl.'s Dep. 23:7-13, 32:22-33:5. In response to the inmates' complaint, Young said he could remove Harris, which

---

[1] Young denies that the inmates reported any threats to Marshall, and Marshall's deposition testimony was inconsistent as to when Harris threatened him. Young Aff. ¶¶ 3-4 ECF No. 11-5. As noted, Marshall testified that Harris threatened to beat both him and Guest with a lock in a sock, and that he told Young of this threat when they spoke. Pl.'s Dep. 27:11-23. Later in the deposition, though, Marshall testified that Harris did not say anything about him until after he had been removed to another dorm. *Id.* at 28:6-12. Even then, Marshall had no personal knowledge of Harris's threats to kill him but only what he had been told by other inmates. *Id.* at 28:17-29:13. Nevertheless, Marshall's complaint alleges he told Young of Harris's threat to kill him, and in a sworn declaration submitted in response to the summary judgment motion, Marshall again states that he told Young of Harris's threats prior to removal from the dorm. Compl. 5; Pl.'s Decl. ¶¶ 3, 6. Young has not asked the Court to treat the sworn declaration as a sham affidavit. Therefore, the Court will construe the evidence in a light most favorable to Marshall and assume for summary judgment purposes that Marshall told Young of the threats made against him prior to Harris's removal from the dorm. *See Scelta v. Delicatessen Supp. Servs., Inc.*, 71 F. Supp. 2d 1222, 1227-28 (M.D. Fla. 1999) (construing evidence in a light most favorable to the non-movant and declining to grant summary judgment based on inconsistent statements).

he did immediately. *Id.* at 18:2-5; 20:3-9. During the conversation with Young, Marshall never requested protective custody. Young Aff. ¶ 6.

After Young left with Harris, he took him to the medical building. *Id.* ¶ 5. They spoke until Harris calmed down, and Harris apologized and stated he was "through fighting." *Id.* Young believed the situation was resolved and the threat ended. *Id.*; Pl.'s Dep. 39:1-10. After about an hour in the medical building, Young took Harris to Building C-1. Young Aff. ¶ 5; Pl.'s Dep. 18:4-6. Despite seeing Harris taken to C-1, Marshall did not express any concerns to Young. Pl.'s Dep. 38:1-4, 39:11-18. RSP has security measures which prevent inmates assigned to one dorm from entering freely into another, though inmates from different dorms share a common area where they gather for chow, pill call, and other activities.[2] *Id.* at 21:24-22:10; Pl.'s Decl. ¶ 8. From the time Harris was taken to C-1 until the assault the next morning, Marshall did not see Harris. Pl.'s Dep. 38:5-7.

On the morning of January 26, 2020, at approximately 5:00 a.m., the inmates from C Building gathered in the courtyard to prepare go to another building for breakfast. *Id.* at 24:25-26:11; Pl.'s Decl. ¶ 9. The distance from the courtyard to the chow building is approximately fifty yards. Pl.'s Dep. 25:5-12. After the inmates were released to go to chow, Marshall started down the walkway. *Id.* at 29:14-16. Before he could get halfway

---

[2] In his sworn declaration, Plaintiff states that when inmates gather for chow, the doors open at once, and inmates from one dorm can enter another. Pl.'s Decl. ¶ 8. He does not, however, claim that such entry is authorized.

7

down the walkway, Harris hit him in the ear from behind with his fist and then kicked him several times, including in the head, mouth, and groin.³ *Id.* at 29:16-30:11, 33:9-10. When Marshall got up, he could see Harris attacking Guest. *Id.* at 30:17-19. As a result of the attack, Guest was taken to the hospital. *Id.* at 30:24-25. Marshall did not go to the hospital but instead was taken to the medical unit for an abrasion above his eye. *Id.* at 31:1-4. Marshall also reports two loose teeth, loss of hearing in his right ear, an injury to his penis, and back and neck pain as a result of the assault. Pl.'s Dep. 20:16-17, 30:9-10, 34:6-8; Pl.'s Decl. ¶ 11. Following the attack, Harris was placed in administrative segregation and then transferred to another prison. Pl's Dep. 38:11, 41:24-42:1. Young was not present during the events of January 26, 2020. Pl.'s Dep. 37:3-7.

    C.    Failure-to-Protect Standard

The Eleventh Circuit has held the Eighth Amendment "impose[s] a impose a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Mosley v. Zachery*, 966 F.3d 1265, at 1270 (11th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This "includes 'protecting prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Farmer*, 511 U.S. at 833). To establish a failure-to-protect claim, a prisoner must show (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam). "Merely negligent failure to protect an

---

³ In his deposition, Plaintiff stated the assault lasted "at least 3 or 4" seconds. Pl.'s Dep. 30:12-14. In his sworn declaration, he claims it lasted "4-5" minutes. Pl.'s Decl. ¶ 10.

inmate from attack does not justify liability under Section 1983[.]" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990) (per curiam).

When examining the first element—a substantial risk of serious harm—courts use an objective standard. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). A plaintiff must "show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). This may be established by demonstrating "(1) an individualized risk; i.e., specific threats directed toward an inmate for reasons personal to him, or (2) generalized conditions of dangerousness." *Wilson v. Danforth*, No. CV 316-040, 2019 WL 3977957, at *8 (S.D. Ga. June 27, 2019), *recommendation adopted by* 2019 WL 3987753 (S.D. Ga. Aug. 22, 2019) (citing *Bugge v. Roberts*, 430 F. App'x 753, 758 (11th Cir. 2011)). "For the latter, an inmate plaintiff must show they are confined 'in a prison where violence and terror reign.'" *Id.* (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014)).

The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. *Marbury*, 936 F.3d at 1233. To satisfy the subjective component, a plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also dr[ew] the inference." *Id.* To satisfy the objective component, a plaintiff must show that the defendant "responded to the known risk in an unreasonable manner, in that

he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

Regarding causation, a "plaintiff must show a necessary causal link between the [defendant's] failure to act reasonably and the plaintiff's injury." *Id.* (internal quotation marks omitted).

### D. Plaintiff Cannot Show that Young was Deliberately Indifferent

Marshall fails to satisfy either the subjective or objective component of the deliberate indifference element. Regarding the subjective component, even if Young was aware that Harris had threatened to kill Marshall on January 25, 2020, the undisputed evidence shows that he believed the situation was resolved following his conversation with Harris. According to Young, Harris calmed down, apologized for his actions, and promised that he was "through fighting." Young Decl. ¶ 5. Marshall does not dispute this, testifying that he believed Young thought the threat had ended. Pl.'s Dep. 38:23-39:10. Nevertheless, Marshall contends that it was not reasonable for Young to believe the situation was resolved. Pl.'s Resp. to Statement of Material Facts ¶ 4, ECF No. 18-2. He argues that Harris had a reputation for violence, of which Young should have been aware. Pl.'s Resp. to Mot. for Summ. J. 1-2, ECF No. 18. In support, he cites Harris's prison movement history—including periods in administrative segregation—which he contends is circumstantial evidence of Harris's violent nature. *Id.* at 2. He also refers to a statement the RSP warden made to Marshall when Harris was first placed in Marshall's cell in early January 2020. *Id.* According to Marshall, the warden stated that Harris was

known to be violent and had been in multiple fights. Pl.'s Decl. ¶¶ 2, 19. In addition to Harris's reputation, Marshall also points to Young's awareness—from his conversation with Marshall, Guest, and Jackson—that Harris had threatened to kill Marshall with a lock in a sock. Pl.'s Resp. to Mot. for Summ. J. 3.

While Young arguably *should* have known that Harris was a substantial risk of causing serious harm to Marshall, that is insufficient to show that Young was subjectively aware of a risk to Marshall. *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (rejecting "should have known" standard, noting that "were we to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not"). There is no evidence that Young was actually aware of Harris's violent nature, and Marshall admitted at his deposition that he did not know if Young had such awareness. Pl.'s Dep. 35:1-5. There are no disciplinary reports in the record, and Marshall does not contend that Young was present when the warden made his statements about Harris.[4] Moreover, even assuming the circumstantial evidence is sufficient to show Young's awareness of a violent history—which it is not—there is no evidence as to the seriousness of Harris's prior incidents such as to put Young on notice of a substantial risk to Marshall. As for the threats made by Harris on January 25, while there

---

[4] In his response to Young's summary judgment motion, Marshall requests that discovery be reopened to allow him to obtain Harris's disciplinary records. Pl.'s Resp. to Mot. for Summ. J. 2. If Marshall felt he needed additional discovery, he should have requested an extension prior to the deadline for filing dispositive motions. His request at this late stage is denied.

is evidence that Young was informed that Harris had a lock in a sock, there is no evidence Young actually saw the weapon at issue.

More critically, even if Young were aware of facts from which an inference *could be drawn* that a substantial risk of serious harm existed, the undisputed evidence shows that Young did not actually "*draw the inference*." *See Goodman*, 718 F.3d at 1332 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." (quoting *Purcell ex. rel. Est. of Morgan v. Toombs Cnty, Ga.* 400 F.3d 1313, 1319-20 (11th Cir. 2005) (emphasis in original))). Young believed—as Marshall concedes—that any substantial risk was ended after his conversation with Harris. Young Aff. ¶ 5; Pl.'s Dep. 38:23-39:10. While Marshall argues that it was "not a reasonable assumption for [Young] to make," that is not sufficient to establish subjective knowledge. Pl.'s Resp. to Statement of Material Facts ¶ 4; *see Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) (holding that a prison official could not be held liable where he failed to draw the inference that a substantial risk of harm existed even where such failure could be described as "stupid" or "lazy" (citing *Farmer*, 511 U.S. at 839-40, 844)).

Marshall also fails to satisfy the objective component. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Marshall contends Young acted unreasonably by not removing Harris from C-Building entirely, as opposed to just a separate dorm. Pl.'s Resp.

12

to Mot. for Summ. J. 6; Pl.'s Dep. 7:3-5. However, "[t]he reasonableness of a prison official's response to a threat does not rise or fall on [an] all-or-nothing, one-size-fits-all approach." *Mosley*, 966 F.3d at 1271. And this was not a case where Young did "absolutely nothing in response to [Harris's] threat." *Id.* at 1275 (internal quotation marks omitted).

Instead, the evidence shows that Young listened to Marshall and the other inmates' complaint, immediately removed Harris from their dorm, allowed Harris to calm down, spoke with him about the matter, and then moved him to another dorm. Moreover, while the other dorm shared certain common areas with Marshall's dorm, the evidence shows that movement between Marshall's dorm and Harris's dorm was not unrestricted. Pl.'s Dep. 21:24-22:10. In fact, from the time Harris was removed from Marshall's dorm around lunchtime on January 25 until the attack the next day, Marshall had no further contact with Harris. Pl.'s Dep. 11:16, 24:12-19; 38:5-7. Thus, to that extent at least, Young protected Marshall from Harris. Further, Marshall did not express any concern to Young after seeing Harris moved into C-1. *Id.* at 39:11-15. In hindsight, Young's removal of Harris to C-1 was insufficient to protect Marshall from being attacked the next morning. However, even though the "harm ultimately was not averted," Young's response at the time was reasonable. *Farmer*, 511 U.S. at 844. Therefore, the Court recommends that Young be granted summary judgment.

## CONCLUSION

For the foregoing reasons, it is recommended that Defendant's motion for summary

13

judgment (ECF No. 11) be granted. Plaintiff's motion for appointed counsel and and/or extension (ECF No. 19) is denied. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED AND RECOMMENDED, this 28th day of June, 2021.

/s/ Stephen Hyles  
UNITED STATES MAGISTRATE JUDGE